IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| A.K., by his Parents and Next Friends J.K. and E.S., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.  05-229 |
| vs. | ) ) ) ) | |
| ALEXANDRIA CITY SCHOOL BOARD | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM ORDER**

THIS MATTER is before the Court on Plaintiffs' Motion for Summary Judgment and Defendant's Motion for Judgment on the Administrative Record.  This case involves a family's attempt to seek reimbursement under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et. seq.* (2000) ("IDEA"), from a public school system for the costs of their child's private school tuition.  The issue before the Court is whether the defendant school system offered the plaintiff child a "free appropriate public education" ("FAPE") that was reasonably designed to provide the child with an educational benefit.  Upon review of the submissions and arguments of the parties, this Court holds that the defendant school system did offer the plaintiff child a free appropriate public education.  Plaintiffs refused the offer and, instead, elected to place the child in an out-of-state residential private school.  Therefore, Plaintiffs are not entitled to reimbursement for the costs of the plaintiff

child's out-of-state residential private school tuition. Accordingly, Summary Judgment is GRANTED in favor of the defendant school system.

## I.   BACKGROUND

Plaintiff A.K. (the "Student") is a special education student who attended Alexandria City Public Schools ("ACPS," "school system") from Kindergarten through seventh grade. Def.'s Brief in Supp. of Mot. for J. on the Admin. Rec. at 2 (hereinafter "Def's. Br. Admin. Rec."). Beginning in preschool, the Student was found to be eligible for special education services under IDEA, and he began receiving such services at that time. *Id.* Plaintiff was attending Hammond Middle School, a regular public school in Alexandria, for seventh grade (2002-03 school year) when he began to experience some difficulties in his behavior and in getting along with other students. *Id.* at 3. The Hammond Staff met with A.K. and his parents (the "Parents") on numerous occasions in an effort to help A.K. work through the problems he was then experiencing. *Id.* In March, 2003, an eligibility committee determined that A.K. continued to be eligible for special education services, however the committee determined for the first time that he had multiple disabilities based on his numerous educational needs. *Id.* at 4; Transcript of Due Process Hearing, September 13, 2004 (hereinafter "Tr."); Administrative Record 102 at 37 (hereinafter "A.R.").

Thereafter, ACPS prepared an Individualized Education Program ("IEP") for A.K., as required by the IDEA, for the 2003-04 academic year to which the Parents agreed on June 5, 2003. Def's. Br. Admin. Rec. at 4.  ACPS proposed placement for A.K. in a therapeutic private day school setting within his local community for his eighth-grade year.  *Id.*; A.R. at 28-29.  The Parents disagreed with that recommendation and, instead, enrolled A.K. at Riverview School, a private residential school outside of Cape Cod, Massachusetts.  Def's. Br. Admin. Rec. at 4.

An IEP team, consisting of ACPS staff, the Parents, and staff from Riverview, met for approximately three (3) hours each on May 21, May 29, and June 9, 2004, to discuss and draw up an IEP for A.K. for the 2004-05 school year.  *Id.* at 5.  That IEP contained a lengthy discussion of the Student's present level of performance, agreed goals and objectives, and a transition plan. *Id.*; A.R. at 30.  However, the Parents and the school system could not come to agreement on the issue of A.K.'s placement. Def's. Br. Admin. Rec. at 5.  To implement the IEP, the school system proposed placement in a local therapeutic private day school setting which would allow the Student to transition back to his community from his out-of-state residential placement. *Id.*  Although the Parents did not agree with the placement recommended by the IEP, the school system sent applications on the Student's behalf to several local private day facilities. *Id.* at 7.  Subsequently, two local private schools, the Phillips

3

School and the Kellar School, indicated that they believed they had an appropriate program for the Student and invited A.K. and his parents to visit their facilities and to interview.  *Id.*; A.R. 102, Sullivan Tr. at 154.  A.K.'s mother visited the Phillips School in July, 2004, however she did not bring the Student for the required interviews at either school because she determined that neither school could satisfy A.K.'s educational needs.  Def's. Br. Admin. Rec. at 7-8.  The Parents then re-enrolled A.K. at the Riverview School in Massachusetts for the 2004-2005 school year and later sought reimbursement for expenses incurred therein, arguing that ACPS had failed to provide A.K. with a FAPE as required by the IDEA.  *Id.*

Subsequently, an independent Hearing Officer heard the Parents' claim for reimbursement during a three-day administrative proceeding.  *Id.* at 14.  The Hearing Officer concluded that ACPS did provide the Student with a FAPE since the school system had offered the Student an appropriate and educationally-beneficial special education program in a private day school in his local community.  *Id.* at 14-15; A.R. 117.  The Hearing Officer also concluded that the Student's IEP included the required offer of a proposed placement and did not need to identify a specific school facility for the Student to attend.  Def's. Br. Admin. Rec. at 14-15.  Therefore, the Hearing Officer denied the Parents' claim for reimbursement of the costs of sending A.K. to the Riverview School in Massachusetts.  *Id.*

The Parents filed suit in this Court against ACPS alleging that the school system did not provide A.K. with a FAPE, and that they are entitled to reimbursement for the cost of sending A.K. to the Riverview School.  ACPS has moved for Judgment on the Administrative Record and the Parents have filed a cross-Motion for Summary Judgment.

## II.   ANALYSIS

**A.   Standard of Review**

Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment will be granted if it is shown that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party is entitled to judgment as a matter of law unless a fair-minded jury could return a verdict for the nonmoving party on the evidence presented.  *See id.* at 247-48.

A district court reviewing a state administrative decision under IDEA may grant summary judgment based upon the administrative record. *See, e.g., DeLullo v. Jefferson Co. Bd. of Educ.*, 71 F. Supp.2d 554 (N.D. W. Va. 1998), *aff'd*, 194 F.3d 1304 (4th Cir. 1999). The court should make an independent decision based on a preponderance of the evidence, yet give due weight to the state administrative findings. *See School Committee of Town of Burlington v. Department of Educ. of Mass.*, 471 U.S. 359, 369 (1985); *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1992). In particular, the reviewing court should consider the factual findings in an IDEA agency decision to be prima facie correct. *See Kirkpatrick v. Lenoir County Bd. Of Educ.*, 216 F.3d 380, 385 (4th Cir. 2000). In cases where the Hearing Officer and the Reviewing Officer's findings are in accord, even greater deference is due to the administrative findings. *See Combs v. School Bd. Of Rockingham County*, 15 F.3d 357, 361 (4th Cir. 1994). The party seeking to overturn a state administrative officer's decision bears the burden of proof in showing that the decision was erroneous. *See Barnett v. Fairfax County School Bd.*, 927 F.2d 146, 152 (4th Cir. 1991); *cf. Schaffer v. Weast*, 546 U.S. ___ (2005) (holding that under IDEA the burden of persuasion in a due process hearing challenging an IEP lies with the party seeking relief).

Judicial review of a state hearing officer's decisions under IDEA is two fold.  *See Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 206 (1982); *Barnett*, 927 F.2d at 151. First, the court must inquire whether the state complied with the procedures set forth under IDEA.  *See Rowley*, 458 U.S. at 206. Second, the court must inquire whether the IEP developed through IDEA's procedures are reasonably calculated to enable the child to receive educational benefits.  *See id.* at 207.  Under the first prong, the court must determine whether the state has adopted a state plan, policies, and assurances as required by IDEA, then it must determine whether the state has created an IEP for the child in question which conforms to the requirements of a FAPE.  *See id.* at 207 n.27.

**B.   Compliance under IDEA**

   1.   Procedural Compliance

ACPS complied with the procedures required under IDEA sufficient to ensure that A.K. received a FAPE.  Only procedural violations that result in a loss of an educational opportunity to the student, or that seriously infringe on the parent's opportunity to participate in the IEP process, constitute a denial of a FAPE.  *See Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (4th Cir. 1990) (stating that the procedural violation must result in a loss of an educational opportunity); *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629, 635 (4th Cir.

7

1985) (showing that the procedural violation must not deny parents the opportunity to participate in the IEP process); *see also W.G. v. Board of Trustees of Target Range Sch. Dist. No. 23*, 960 F.2d 1479, 1484 (9th Cir. 1992) (acknowledging both propositions). The Parents argue that they were unable to have meaningful participation in the IEP process based on the following three procedural violations which they maintain operated to deny A.K. a FAPE: (1) the Parents had never been notified that private placements in the area would be considered, (2) "specific programs were not disclosed by ACPS at the IEP meeting," and (3) "no clear picture had been presented as to what services were available and how they [would] be provided to A.K." Pl.'s Brief in Supp. of Mot. for Summ. Jud. at 17 (hereinafter "Pl.'s Brief"). The Court will address each of these allegations in turn.

    a.)   <u>Notification that Placements in the Area Would be Considered</u>

ACPS did not deny A.K.'s parents a meaningful opportunity to participate in the IEP process because the Parents were on notice that the ACPS had considered private placements in the area for A.K. The Parents argue that A.K. was denied a FAPE because they were not notified that private placements in the area would be considered until that matter was first discussed during the final thirty minutes of the final IEP conference call on June 9, 2004.

Pl.'s Brief at 16.  They maintain that the late and sudden notification that private placements in the area were being considered "left the parents without any meaningful basis to participate in the discussion."  *Id.*

The Court rejects this argument because the record clearly indicates that the parents knew, or should have known, that ACPS considered private placements in the area to meet A.K.'s needs well in advance of the June 9, 2004, conference call.  ACPS had recommended a "Level II Private Day Placement" for A.K. in its proposed IEP for the 2003-04 school year, an IEP which the Parents received and signed.  A.R. 28 at 1; Def.'s Brief in Opp. to Pl.'s Mot. for Summ. J. at 1 (hereinafter "Def.'s Brief").  A recommendation for "Level II Private Day Placement" was also written on the 2004-05 IEP on which the Parents wrote, "I . . . disagree to regular school year placement."  Def.'s Brief at 1-2; A.R. at 1.  This record clearly indicates that the Parents had more than adequate notice that ACPS considered private day placement in the area to be appropriate for A.K.  Therefore, this recommendation did not come as a surprise to them and did not deprive them of a meaningful opportunity to participate in the IEP process.

    b.) <u>Disclosure of "Specific Programs" at the June 9, 2004 IEP Meeting</u>

ACPS did not deny A.K. a FAPE because the school system was not required to identify in writing any *specific* private school

9

for the Student's placement in order to satisfy the requirements of the IDEA. The Parents contend that ACPS denied A.K. a FAPE based on its failure to "identify, discuss, and locate an appropriate private day placement during the EIP process." Pl.'s Brief at 17. This argument fails because, as this Court has held, "a recommendation for a child's educational placement means a recommendation to the actual educational program and not the particular institution where the program is implemented." *Jennings v. Fairfax Co. Sch. Bd.*, 35 IDELR 158 (E.D. Va. 2001), aff'd 2002 U.S. App. LEXIS 14372 (4th Cir. July 16, 2002) (citing *Leonard v. McKenzie,* 869 F.2d 1558, 1562-63 (D.C. Cir. 1989) (acknowledging that an IEP is not location specific)). Thus, in order for the school system to make a proper recommendation for placement, the school system must make a written recommendation of a specific educational program for the child. *See generally Leonard,* 869 F.2d at 1563. ACPS complied with this procedural requirement. During the June 9 conference call, ACPS recommended a private day school placement for A.K. and specifically mentioned the Kellar School and the Phillips School as options. Private day school placement is a term of art describing an educational program which includes several characteristics such as a small overall student body size, small classes, small facility, extensive clinical support, the ability to work individually with a student, extensive behavioral management, and parental involvement. Therefore, the June 9, 2004, recommendation to place A.K. in a private day school complied

10

with the IDEA's procedural requirements for a written education placement offer.

    c.) <u>Description of Available Services and How They Would be Provided to A.K.</u>

ACPS did not deny A.K. a FAPE because, as the Hearing Officer concluded, the services required by A.K. were sufficiently set out in, or contemplated by, the IEP. In response to the Parents' contention that the supplemental and transitional services to be provided to A.K. were not specifically set forth in the IEP, the Hearing Officer stated,

> It is my opinion that the potential problems to be encountered by the transition to private day placement, such as stress, different environment, confusion, etc., are to be met with such supplemental services as counseling and therapy, <u>which are set forth in the IEP</u>. Thus, it is not necessary for the IEP to presume what transition problems A.K. may encounter, then describe what services will be provided to combat them. This is too inflexible an approach.

A.R. 117 at 25-26 (emphasis added).

Similarly, when the Parents alleged a procedural violation based on ACPS's failure to provide A.K. with extended school year ("ESY") services from July 1 through August 1, 2004, the Hearing Officer concluded that the lack of provision of these services "was simply the result of a miscommunication between the parties, and does not entitle the parents to reimbursement of A.K.'s summer school expenses at Riverview in 2004." A.R. 117 at 26. As mentioned, this Court must consider the factual findings in an IDEA agency decision to be prima facie correct. *See Kirkpatrick*,

11

216 F.3d at 385.  Here, there is insufficient evidence to rebut this presumption, particularly in light of the fact that the parents only agreed to the portion of the IEP dealing with ESY services on July 2, 2004 leaving ACPS little time to secure those services for A.K. during the aforementioned period which began on July 1, 2004.  Furthermore, by July 11, 2004, A.K. was already out of the area and again attending Riverview School, which would have further hindered any effort to provide ESY services during this time.  Def's. Br. Admin. Rec. at 10.  Therefore, the Court concludes that, on these facts, the failure of ACPS to provide ESY services to A.K. during this period was not a procedural violation of the IDEA and did not operate to deny A.K. a FAPE.

    2.  Substantive Compliance

    ACPS offered A.K. a FAPE.  A FAPE "consists of educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction."  *See Rowley*, 458 U.S. at 188-89.  This standard is satisfied when the state provides personalized instruction with sufficient support services to permit the child to benefit educationally from that institution.  *See id.* at 187.  As explained above, in June, 2004, ACPS recommended that A.K. be placed in a private day school.  In addition, during that time, ACPS made a placement offer both at the Phillips School and the Kellar School.  The Hearing Officer found that private day school placement would be appropriate

12

because it was reasonably calculated to offer A.K. educational benefits.  A.R. 117 at 26–27.  The record supports the Hearing Officer's finding.  The recommended private day schools offered small classes, extensive individual attention, structure and clinical support, as well as experienced staff trained in special education and emotional disabilities.  The Phillips School is a private day school located in Annandale, Virginia that serves students with a variety of disabilities, including students with learning disabilities, attentional issues, and social interaction difficulties.  Def's. Br. Admin. Rec. at 8 (citations omitted).  The Phillips School provides a highly-structured, team-oriented environment for its students and features a full-time language therapist, occupational therapist, counseling staff, behavioral staff, vocational staff, and two reading specialists.  *Id.*  Similarly, the Kellar School is a fifty-student "therapeutic day school" located in Fairfax, Virginia that offers a "structured, individualized educational program in a supportive environment." *Id.* at 10 (citations omitted).

The Parents cite the opinions of two experts familiar with A.K., Ms. Cheryl Wietz and Dr. William Stixrud, to support their contention that neither placement program was sufficient to provide A.K. with an appropriate education.  Pl.'s Brief at 20-27.  The Hearing Officer considered the testimony of these experts as well as the testimony of several ACPS officials who were familiar with A.K., including Susan Sullivan, a Private Placement Specialist, and Cara Cohen, an Autism Resource

13

Specialist. In contrast to the experts presented by the Parents, the ACPS officials testified that a private day placement was appropriate for A.K. and that either the Phillips School or the Kellar School could successfully implement A.K.'s 2004-2005 IEP. A.R. 117 at 14-15, 18-20. In reviewing the record, the Court finds sufficient evidence to support the Hearing Officer's conclusion that private day school placement would be appropriate for A.K., and that ACPS properly recommended such a placement. Therefore, ACPS offered A.K. a FAPE in compliance with IDEA.

C.  <u>Reimbursement under IDEA</u>

The Parents are not entitled to tuition cost reimbursement from ACPS for sending A.K. to the Riverview School. Parents are entitled to retroactive reimbursement for sending their child to a private school only when the state denies their child a FAPE. *See* 20 U.S.C. § 1412 (a)(10)(C); *Burlington School Comm. v. Department of Educ.*, 471 U.S. 359, 369-70 (1985); *Leonard*, 869 F.2d at 1560. A.K.'s parents are not entitled to reimbursement for time at the Riverview School because ACPS offered A.K. a FAPE during the June, 2004 IEP meeting. Nonetheless, A.K.'s parents rejected this offer. The Parents' rejection of this offer is clearly evidenced by their declaration on the 2004-05 IEP stating that they did not agree with the recommendations proposed in the IEP. In addition, the testimony of A.K.'s mother affirms such rejection. A.K.'s mother unequivocally stated that she rejected the proposed June, 2004 IEP plan for private day placement.

Accordingly, under *Carter* and *Leonard*, the Parents are not entitled to reimbursement for tuition costs under IDEA for sending A.K. to the Riverview School for the 2004-05 school year. *See Carter*, 510 U.S. at 15; *Leonard*, 869 F.2d at 1560.

### III. CONCLUSION

For the foregoing reasons, this Court holds that ACPS complied with the requirements of IDEA, and properly offered the Parents a FAPE for A.K.  The Parents unequivocally rejected the offers for a FAPE placement.  Accordingly, it is hereby

ORDERED that Defendant's Motion for Judgment on the Administrative Record is GRANTED.  It is further

ORDERED that Plaintiffs' Motion for Summary Judgment is DENIED.

The Clerk is DIRECTED to enter JUDGMENT in favor of Defendant Alexandria City School Board and against Plaintiffs A.K. by his Parents and Next Friends J.K. and E.S.

The Clerk is directed to forward a copy of this Memorandum Order to counsel of record.

Entered this __20th___ day of December, 2005.

_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
12/20/05